No. 2137.—EMILY HATCHER AND HUSBAND *v.* JARED R. JACKSON.

The minor has a legal mortgage on the property of the tutor or tutrix to secure the faithful administration of his estate. C. C. 3298.

Where the mother of minor heirs contracts a second marriage without the consent of a family meeting, she loses the tutorship, but if she first obtains the consent and approval of a family meeting she retains the tutorship, and her second husband becomes the co-tutor to the minors by a former marriage. In such a case the property of the co-tutor is not under legal mortgage for the faithful administration of the tutorship.

APPEAL from the Fifth Judicial District, parish of East Feliciana. *Posey,* J. *McVea & Hunter,* and *Campbell, Spofford & Campbell,* for plaintiffs and appellants. *Cross & Hardee,* and *Race, Foster & E. T. Merrick,* for defendant and appellee.

TALIAFERRO, J. The plaintiff, Emily Hatcher, wife of John Marston, alleging that she has a legal mortgage on certain lands of the defendant, brings this suit to enforce it. She avers that her right of legal mortgage grew out of indebtedness to her during her minority by her mother as tutrix and Thomas Davis, her co-tutor. That this indebtedness was fixed by judicial decree of the proper tribunal on the sixth June, 1866, at $41,165 44, with legal interest, with recognition of tacit mortgage in her favor on all the immovable property that belonged to the said tutrix and co-tutor during and since the tutorship—a period extending from the year 1844.

93

The defendant denies that the plaintiff has the right claimed upon the land owned by him, or that she has a legal demand against her co-tutors. He pleads that the purchase price of the land now sought to be made liable to legal mortgage having been received by plaintiff's mother, acting as administratrix of the estate of Thomas Davis, the former co-tutor, and carried into the account and distributed according to a tableau to which plaintiff was a party, the sale was tantamount to a probate sale relative to her, and the property cleared of any claim she might have. He also pleads the prescription of three, four and five years.

It seems that the father of the plaintiff, Horam Hatcher, died in August, 1842, when she was less than a year old—that her mother, in April, 1844, married Thomas Davis. The plaintiff was sole heir of her father, whose succession was worth $16,896, of which $10,400 was his separate property, and the remainder community. The principal property was a plantation and slaves. Davis took charge of this plantation, made crops, shipped and disposed of them in his own name, bought and sold property, and was the principal manager of Hatcher's estate for near fifteen years. In 1845 he purchased a tract of land of about four hundred acres lying in the parish of East Feliciana, and sold it in 1858 to the defendant. The right of plaintiff to legal mortgage on this land forms the subject of this controversy. Judgment was rendered in the court below in favor of the defendant, and the plaintiff appealed.

The prominent question before us in this case is, has the minor a legal mortgage on the immovable property of his co-tutor as well as on that of his tutor for the faithful discharge of his duties in that capacity?

A solution of this question is not free from difficulty. Our laws in regard to tutorship have been, to a great extent, borrowed from the Code Napoleon of France. The interpretation given in France to the articles of that Code which treat of the co-tutor clearly establish that a tacit or legal mortgage exists upon his property, although it is not so expressly announced by that code; and, although article 2115 of the Code Napoleon declares that "mortgage takes place only in the cases and according to the forms authorized by law," the articles 395 and 396 of that code, and articles 272 and 273 of our Civil Code are in substance the same, except that in article 272 of our code, in addition to rendering the second husband, and the mother who enters into a second marriage without being authorized by a family meeting, to retain the tutorship, responsible *in solidum* for all the consequences of the maladministration of the tutorship, unduly kept by her, declares the estate of the husband tacitly mortgaged as a security for that responsibility.

Article 395 of the Napoleon Code does not declare the estate of the

second husband under legal mortgage. The article 272 of our present code is taken from the Louisiana Code of 1808, title 8, section 2, article 10. But that code has no article analogous to article 395 of the Napo-. leon Code and to article 273 of our present code. It makes no provision for cases in which second marriages take place *with* the sanction of a family meeting for the retention of the tutorship by the mother after marriage. The compilers of the code of 1825 inserted, after article 272 (identical with the article we have referred to in the code of 1808), the analogous article 396 of the Code Napoleon. The article 273, immediately succeeding the one taken from the old code, article 10, page 60, in which a legal mortgage is declared to exist on the property of the second husband where the marriage takes place without the previous consent of a family meeting, that the mother shall retain the tutorship, is in these words: "When the meeting of the family shall retain the mother in the tutorship, her husband becomes, of necessity, the co-tutor, who, for the administration of the property, subsequently to his marriage, becomes bound jointly with his wife." This article, we see, does not contain the provision of the preceding one relating to the legal mortgage.

It could not have escaped the attention of the eminent jurists who were engaged in the compilation of our present code that by the interpretation given by the courts of France to articles 395 and 396 of the Napoleon Code, a legal mortgage attaches to the property of the co-tutor. Did they, in copying these articles into our code, intend that they should have the same construction here that they have in France?. From one point of view it would seem that they did. But we think there are grounds for doubt that such was the intention. The natural tutrix of minor children, contracting a second marriage without the authorization of a family meeting to retain the tutorship, loses it *ipso facto*. She is no longer tutrix, and there cannot be a co-tutor. In such a case the husband is not recognized as a co-tutor. He is rather viewed as a trespasser for assuming the administration of minors' property without legal sanction. The mother is deprived of the right she enjoyed previous to the marriage. Both are jointly made responsible if they unlawfully persist in the administration of the minors' estate, and the property of the new husband is declared under legal mortgage as an additional safeguard against injury to the minors.

The case is different when a council of the family retains the mother in the tutorship after the marriage. The husband is jointly bound with his wife for his proper administration of the property, but his estate is not declared to be, on that account, under legal mortgage. It is a privilege of a natural tutor to be exempt from entering into bond and security. The mother, in that capacity, retains her privilege after a second marriage if the assembly of the minor's relatives accord it to her. The extension of the right is presumed to be given upon the

confidence of the relatives and friends of the minors in the prudence and integrity of the second husband. He becomes, of necessity, as the law declares, the co-tutor. Being approved by those whom the law clothes with this discretion, it would seem anomalous that he should be placed in a no less onerous condition than the one who assumes a tutorship without authority.

If the co-tutor be in all respects a tutor according to the sense in which the term tutor is understood, and the functions of the co-tutor are equivalent to those of the tutor, then the argument has force that the property of the co-tutor is subjected to legal mortgage, because, by article 3298 of the Civil Code, a legal mortgage exists on the property of tutors in favor of minors.

The functions of the co-tutor would seem to be subordinate, and not of a plenary character. They cannot be performed by separate action on his part, and only conjointly with those of the tutrix. They proceed from and are dependent upon those of the tutrix and cease with them. If the tutrix should die during the tutorship, the functions of the co-tutor would at once terminate. It is not a distinct and separate office independent of any other. It is not enumerated among the different kinds of tutorship of which the code treats, but is merely incidental to one of the four kinds into which tutorship is divided.

In the case of Fabre v. Hepp, 7 An. page 7, this court incidentally expressed the opinion that where the tutrix had, previous to her second marriage, been authorized to retain the tutorship, no legal mortgage attached to the property of the co-tutor.

Legal mortgages are *stricti juris*. Article 3280 of the Civil Code is very explicit on the subject. It declares that " no legal mortgage shall exist except in the cases determined by the present code."

We are unable to find that it is any where clearly and distinctly announced by our law that the property of co-tutors is subject to legal mortgage, and must adopt, as our decision, the opinion suggested by our predecessors in the case of Fabre v. Hepp.

Entertaining these views, it becomes unnecessary to examine the other points of defense.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be affirmed with costs in both courts.