Life Association of America vs. Hall.

## No. 7922.

### LIFE ASSOCIATION OF AMERICA vs. G. L. HALL.

The Court of ordinary jurisdiction has the power to entertain to final consummation the executory proceedings against a minor's property. Soye vs. Price, 30 An., 93, re-affirmed.

An inventory of the minor's property, as a pre-requisite to a partition, is not indispensable when there is only one piece of property to be partitioned.

Property held in common with a minor and sold under a judgment in a partition suit, may be sold regardless of appraisement.

When property, in which the natural tutor has an undivided share, is sold to effect a partition, there is no law of the State which authorizes the referring of the legal mortgage of

| 33 | 49 |
| 45 | 296 |
| 33 | 49 |
| 46 | 370 |
| 33 | 49 |
| 47 | 99 |
| 47 | 895 |
| 33 | 49 |
| 49 | 173 |
| 49 | 184 |
| 33 | 49 |
| 51 | 137 |
| 33 | 49 |
| f52 | 1409 |
| 33 | 49 |
| 106 | 75 |
| 33 | 49 |
| 120 | 41 |
| 33 | 49 |
| 116 | 75 |
| 33 | 49 |
| 123 | 88 |

the minor to the proceeds of the sale. The mortgage shall remain attached to the un-divided portion of the property which belonged to the tutor, until the removal of it by means of the special mortgage provided for by law, or the extinction of it by settlement of the minor's rights at his majority. The purchaser, in the meantime, takes the prop-erty subject to the minor's mortgage, and retains in his hands the price of the tutor's share.

Lecarpentier vs. Lecarpentier, 5 An , 497, affirmed.

The application of an *Amicus curiæ* for a Re-hearing, though made within the six judicial days, does not retard the finality of the judgment of this Court.

APPEAL from the Fifth District Court, parish of Orleans. *Rogers* J.

*Gibson, Hall & Montgomery* and *S. S. Carlisle* for Plaintiff and Appellee.

*T. M. Gill* for Defendant and Appellant.

*Breaux & Hall, Amici curiæ.*

The opinion of the Court was delivered by

BERMUDEZ, C. J. The object of this suit is to compel the defendant to a specific performance, by complying with the terms upon which he agreed to purchase from the plaintiff the real estate described in the petition.

It is admitted by the defendant that he consented to buy the property, but he charges that plaintiff's title is not such as he is bound to accept.

It appears that the real estate in question formed part of the assets of the community once existing between John C. Stickney and his wife, which was dissolved by her death, she leaving a minor child.

The father qualified as tutor by nature, and the proper mortgage inscriptions against him as such were made.

Subsequently, treating the community and succession as thoroughly liquidated and the real estate in question as belonging, *in kind,* share alike, to himself as surviving partner in community and to his minor son, as sole heir of his deceased wife, Stickney was authorized as tutor, by a family meeting held on behalf of the minor, to borrow for account of the latter, the sum of twelve hundred dollars and to secure its payment by special mortgage on the undivided half inherited by his son. The sum was procured and the mortgage was consented. At maturity the creditor, remaining unpaid, proceeded by executory process, before a court of ordinary jurisdiction, to have the mortgaged property seized and sold and became the adjudicatee of it. The plaintiff, purchaser, thus becoming the owner of the minor's undivided share, which had sold for less than the claim, instituted a suit in partition against his co-owner, Stickney, and obtained a judgment decreeing the sale of the entire property, which was not susceptible of a convenient division in kind.

In February, 1879, guided by the light then thrown on the jurisprudence in matters of partition, by the ruling made in January, 1878, in Boutté vs. Boutté, 30 A. 177, since affirmed in Buddecke vs. Buddecke, in 31 A. 574, the plaintiff brought that partition suit before a court of ordinary jurisdiction. At the public sale the plaintiff became the adjudicatee of Stickney's half, and so the sole owner of the entire property.

Finding that half incumbered with the general mortgage registered in favor of Stickney's minor son, the plaintiff took a rule on Stickney as tutor, to show cause why the mortgage should not be referred to the proceeds, and why the inscription from which it resulted should not be cancelled. The rule was made absolute. The defendant refuses to take the title offered him by the plaintiff on four grounds :

1st. The executory proceedings to coerce payment of the amount due by the minor and secured by mortgage on his undivided half of the property, were carried on before a court of ordinary jurisdiction ;

2d. The judicial partition provoked by the plaintiff as adjudicatee and purchaser of the minor's undivided half, against Stickney, the co-owner, was not preceded by an inventory ;

3d. The property was adjudicated, without having been previously appraised at all, and therefore regardless of evaluation ;

4th. The proceeding, by which it is attempted to refer the minor's mortgage to the proceeds of sale of the tutor's half, was carried on uncontradictorily with the father, tutor, and not with the undertutor, the father, tutor, further, having no authority to receive the proceeds of sale of his own encumbered property and give a valid discharge of the mortgage.

*First.* The court of ordinary jurisdiction had a right to entertain, to final consummation, the executory proceedings. 28 A. 753. It could have done so if the debt had been a community or succession debt, *a fortiori*, could it do so where the debt had been contracted for account of the minor after the death of his mother, from whom he had inherited the share subsequently mortgaged, and *after* he had, through his tutor, taken possession of her succession? Whatever contrarieties once existed on the subject were finally adjusted in Soye vs. Price, 30 A. 93, which has now become a rule of property. Also, 31 A. 52, 112, 574.

*Second.* It is not conceived that in a case in which there is nothing but a small improved city lot to be partitioned, not susceptible of a convenient division in kind, the law requires the taking of an inventory. It was decided, where an inventory was considered necessary that it could be made after a judgment in partition. The provision of the law in such matters appears to apply only to cases in which there are several pieces of property to be partitioned by sale or allotment. The inventory

in such cases is intended to enlighten the court, after hearing testimony, or receiving the *routine* report of experts touching the conveniency of a division in kind, in order that, when the moment of adjudication arrives, at which the court is to determine the *manner* in which the partition is to be effected, the court may act more advisedly. C. P. 1024, 1027. In tracing the minor's title to his mother's estate, it is found, however, that an inventory was taken some years before; no one asked a re-appraisement of the property.

*Third.* That real estate held in common with minors can be validly sold under a judgment in partition, rendered by a competent court, after due proceedings, and contradictorily with proper parties, regardless of any appraisement, and to the highest and last bidder, can no longer be considered an open question. 7 L. 316; 8 L. 179; 13 L. 431; 2 A. 553; 14 A. 157; 15 A. 697; 12 M. 185; 21 A. 253; 30 A. 1012; 31 A. 572; R. C. C. 345 (339); Troplong, Vente, vol. 2, 873.

*Fourth.* The last objections are of a more serious character, and deserve full consideration.

An inspection of the mortuary proceedings in the succession of Mrs. Stickney, shows that the property composing the assets of the community, in which she had a *residuary interest only*, consisted solely of the real estate in question, valued at $3500, and of some movable effects, appraised at $262.

It is a principle deeply embedded in our law and jurisprudence, that the minor's general mortgage on the property of his tutor is intended to secure not only the past but also the future indebtedness, and the faithful administration of the tutor. R. C. C. 3314 (3282); 7 M. 365; 5 A. 565; 7 A. 545-6; 12 A. 78.

It is apparent, in this case, that the tutor has received for account of the minor twelve hundred dollars, the amount of the loan already mentioned, and has in his possession the movable effects inventoried, and which were valued at the time at $262.

The mortgage affecting the tutor's undivided half of the real estate in question had for its object, in law, to secure the rendition by him to the minor, when becoming of age or fully emancipated, a correct and satisfactory account of his administration of that money and those effects, and, besides, of whatever other assets might thereafter come to his hands for account of his son.

The law has wisely provided, however, that such mortgage shall not be *absolutely* a dead weight on the property of a tutor, but can be removed and restricted by the substitution of a special one, to be given *after strict* compliance with certain prescribed formalities. R. C. C. 325, 230. The effect of such mortgage is simply restrictive and not destructive. 15 A. 417; 9 A. 195; Troplong, Hyp., vol. 2, No. 644; 2 L. 536; 17 L. 194; 15

L. 218; 17 L. 194; 2 A. 657; 19 A. 57, 177; 26 A. 144. The inference then, perfectly logical, is that, unless such special mortgage be given and substituted, the general one remains in full vitality.

It does not appear in this case that there exists any mortgage, recorded against the tutor's half, enjoying priority over that of the minor.

The tutor could not have removed the general mortgage, unless by substituting to it a special mortgage. A creditor of his, enjoying priority over the minor, might have done so; C. P. 170, 12 A. 361; 6 R. 51; 13 A. 508; but any one, purchasing the tutor's share, either à l'amiable or at public judicial sale; provoked by a co-proprietor, could not exercise greater rights than the tutor himself could have done. Even if he could have done so, the result could not certainly be accomplished by a proceeding against the tutor, who had an interest, clashing with that of his minor son, in having the encumbrance removed, so as to enable him to receive the proceeds of the sale of his own mortgaged property. This could the less take place in the case of a tutor who furnishes no bond at all, and who cannot be forced to give any. 12 A. 361.

It has been decided that, where an heir mortgages his share of inheritance, the mortgage, under a sale to operate a partition, is shifted to the proceeds; 27 A. 125; 21 A. 253; but those rulings were made in cases in which, pursuing rights, recognized in them by Art. 3399 (3362), the creditors, by seeking the proceeds, ratified the sale, and on receiving payment released all their privilege or mortgage claims. Whether, in the case of a sale to operate a partition among co-heirs, or any class of co-owners, the mortgage creditors could be driven, against their will, to accept the proceeds, in order to clear the property and pass it unencumbered to the adjudicatee, is a question which has not, that we know, been as yet clearly adjusted, but it does not now appear to us why it should not be so, if the sale was truly a judicial one, made after compliance with all legal prerequisites; for it is manifest that the creditors, having the ability to protect themselves, admonished by thirty days' advertisement, by bidding on the property to its value, or otherwise doing that which might insure an advantageous sale, and having the power of receiving payment, could be required to confine their mortgage to the proceeds of sale.

It is clear that a mortgage granted by an heir on his undivided share of the property inherited by him, cannot prevent his co-heir from suing for a partition of the same, 9 A. 212; and that the mere fact of such sale, which is not probate in character, does not raise the mortgage encumbering the same. 26 A. 690; 31 A. 506. In probate matters, when the sale is ordered at the instance of the succession representative or of creditors, the jurisprudence is that the mortgages are referred to the proceeds for satisfaction of the claim thus secured, in due course

of administration, 7 A. 612; but the rule is not the same in a partition suit, which presupposes a liquidation and final settlement of the succession, as also a definitive determination of what the *residuum* accruing to the heirs consists, and a putting in possession.

The case is different where the property, part of which was so mortgaged, is sold by the administrator for the purpose of liquidating and partitioning the estate, as, in such a circumstance, the proceeds stand in place of the property in the hands of the administrator. Succession of Pigneguy, 12 R. 450. It was contended in the case, under a misconstruction of Arts. 1342 and 1343 of the Code of 1825, that the mortgageor would receive the proceeds of his share as if no such mortgage had been given, but the Court said, that it by no means followed that the relative nullity of the mortgage could avail or enrich the mortgageor at the expense of the hypothecary creditor. *Resolutio jure dantis, resolvitur us accipientis.* 21 A. 251.

In 1 A. 236, the Court sanctioned, in a case of dire necessity, the sale of the property of a tutrix, *free* from the tacit mortgage encumbering it, in favor of the minor children, it being considered that a sale would have had to be ordered if the property belonged to the minors.

In 19 A. 55, the power of the Court so exercised was questioned for very good reasons given, the Court saying : " If we depart from the law quoted above, enacted to protect and secure the minor's rights, there is no stopping place; the law would become a vain thing.

In 30 A. 304, the minors' mortgage was permitted to be postponed in favor of a loan secured by mortgage, to provide for the maintenance and education of the minor, and the minor having enjoyed the benefit of the money borrowed, was at his majority declared estopped from interfering with the rights of property acquired, under such first mortgage, and derived from its foreclosure.

It was claimed, in that case, that the ruling in 1 A. 236, had been overruled in 19 A. 55, and the Court said, " if it were so, the ruling," in the last case, " was itself overruled."

It must be confessed, that the rulings of the Court in those cases, practically amounts to judicial legislation, but, in justification, it must be said that they were made in cases of the greatest urgency, on the hypothesis that the property of the tutor, could with his consent, be dealt with, *as though it belonged to the minors themselves.* No legislation has intervened to modify these rulings, which in view of the extreme cases in which they were made, are entitled to respect, particularly as they were made in cases in which the minors had been materially benefited. There is no reason why the precedents established in those cases, should not be followed now, in similar instances, under the vigilant eye of the Court entrusted with the protection of minors and of their rights.

After blending together the various, and at times discordant, rulings expounding the law on the subject under consideration, we consider that the adjudication made in the case of Lecarpentier, 5 A. 497, so far as it declares that the general mortgage continues to attach on the tutor's share, notwithstanding a judicial sale, to effect a partition, and can only be replaced by a special mortgage, and suggests the investment in real estate, under the supervision of the Court, in the name of the tutor, of the proceeds of his share in the property held in common and sold to effect a partition, contains a correct exposition of the law and jurisprudence relative to our system concerning the legal mortgage in favor of minors, and we formally affirm it, with those limitations, in the present case, regardless of the vacillating, vague and unsatisfactory intervening *dicta* on the subject. 7 A. 9, 612; 21 A. 253; 1 A. 236; 19 A. 55; 30 A. 304.

Ever since 1843 there exists a statute, which is now found in the Revised Code of 1870 as No. 1333, to the effect that all judicial partitions, where the property is divided *in kind*, the mortgages, liens and privileges existing against one of the co-proprietors shall by the mere fact of the partition attach to the share allotted the co-proprietors. There never was enacted a statute to the same effect in cases of a partition *by sale;* there never was made a ruling referring the mortgage to the proceeds without the consent of the creditor. In the case of a partition in *kind*, all the rights of the creditor are directed against the property allotted, against which he can exercise them.

In the case of a partition *by sale*, who could receive the price from the purchaser ? The sheriff, who is the executive officer of the Court, no doubt could, but to whom would he be authorized to pay it ? Would it be to the co-owner, to the debtor whose share has been mortgaged ? Surely not. 17 L. 522; 23 A. 617. Would it be to the mortgage creditor, especially if that creditor be a minor ? If so, where is the law, or ruling, that can be invoked to compel that creditor to take it ? We find none. How, in a case like the present one, can it be said that the mortgage attaches to the proceeds, when those proceeds are to be paid to the tutor, the *debtor himself,* whose share was mortgaged to secure the rights of the minor ? If this could be done, the security provided for the protection of minors would vanish. 23 An. 617.

From the fact that there exists special legislation in cases of partition *in kind*, referring the mortgage to the property allotted, and that there exists none in cases of partition *by sale*, it must be irresistibly inferred that in the last case the mortgage is not shifted to the proceeds, and continues to attach to the realty.

In the present instance, the minor is entitled to a general mortgage to secure an amount as yet unliquidated. This mortgage, of course,

does not prevent the sale of the tutor's property, 12 A. 61, 361; 13 A. 508; 6 R. 51; C. P. 715; 19 A. 364; for no one can be compelled to hold property in a state of indivision beyond a certain time, unless the contrary has been agreed upon, R. C. C. 1289 (1215); but that property passes encumbered with the minor's mortgage, 5 A. 497, 19 A. 364, 31 A. 506, which shall remain so attaching until the rights of the minor shall have been liquidated at his majority, full emancipation, or death, and then, satisfied to the extent of what may, at such time, be found to be due him by his tutor, C. P. 715; 6 R. 51; 12 A. 361; or the proceeds invested, as intimated in Lecarpentier's case.   5 A. 497.

The purchaser of the tutor's share may find this state of things a hardship, but if it be such, he has no occasion to complain, for he is the original creditor of the minor who seized, sold and bought the minor's half.

By lending his money on such undivided share, by purchasing the same, and by next acquiring the tutor's portion, he has voluntarily brought on himself a condition of things from which we admit our inability to extricate him; but we cannot see how he should complain, as he has the right of retaining the portion of the price accruing to the tutor. Sales of such a character, instead of proving prejudicial, would rather seem to be beneficial, when the right of retention of the price is considered.

We hold that, where there exists no anterior mortgage creditor, urging payment, the general mortgage of a minor can be removed from his tutor's property by nothing short of a special mortgage, given after compliance with all legal requisites on the subject, 17 L. 194; 19 A. 557; 5 A. 497; 26 A. 144; consequently, that the order made by the District Judge for the unconditional erasure of the minor's mortgage was erroneously made, and therefore is no protection to the purchaser against the minor's actual or eventual claim. The purchaser having looked beyond the decree and shown grave irregularities, which hang as a sword over his head, is entitled to this expression of opinion from us.   9 A. 560.

If the general mortgage which the law has created for the protection of the rights of minors, over which it watches with a jealous eye and great solicitude, could be effectually destroyed, as is attempted to be done in the present instance, the shield with which, it is said, that it covers them, would be nothing but a thin vapor and a real mockery.

It must be humbly acknowledged that our jurisprudence on the last matter set up as a defense is not such as can be referred to with confidence and satisfaction. It may be a cause of regret for tutors, in cases like the present one, that they cannot freely dispose of their real estate, disengaged of the mortgage in favor of the minors, whose persons or property are in their charge. Such regrets may be largely shared

by their creditors or by persons associated with them as co-owners, but with those inconveniences we have nothing to do. They are exposed to the same unpleasant embarrassments by which their debtors or co-proprietors are themselves incommoded.

The defendant cannot be compelled to accept the title tendered him by the plaintiff.

It is, therefore, ordered that the judgment of the lower court be reversed, and that there now be judgment in favor of the defendant, rejecting plaintiff's demand with costs in both courts.

---

## On Application for Rehearing.

BERMUDEZ, C. J.   The defendant, in whose favor the judgment of this Court was rendered in this case, having applied to the clerk for a copy of the same, and the latter having declined to deliver it, on the ground, that within the six judicial days following the rendition of the decree, an application for a rehearing was made by two members of the bar, as *amici curiæ*, and is still on file undisposed of, the question is submitted to us to know whether such copy should be issued.

We find no application in the record from any party interested in the result of the suit.

The Code of Practice, Art. 912, declares that "in the interval between the day on which the judgment is rendered and that on which it becomes final, a party dissatisfied with the judgment may apply to the court for a new hearing in the cause."    *    *    *    *

The word "party" means a party to the suit. The article, then, is to the effect, that unless a party to the suit apply seasonbly for a rehearing, the judgment shall become final. There is a case, also, in which a rehearing may be granted, and that is, where the Court *proprio motu*, or on the suggestion of *an amicus curiæ*, orders, before the expiration of the delay, that the case be heard anew.

The Court has not acted *proprio motu*, or on suggestion, within the six judicial days, and the judgment having become final, in the absence of any complaint from any party to the suit, and being the property of the defendant, C. P. 548, the application made by the *amici curiæ* cannot prevent the defendant from obtaining the desired copy.

We cannot consider the petition of the *amici curiæ*, and, therefore, cannot allow it.   30 A. 617.

It is, therefore, ordered that the clerk deliver to the defendant a certified copy of the judgment herein rendered by this Court, for transmission to the lower court, superseded by the Civil District Court for the parish of Orleans.