PROVOSTY, J.
[1] The present suit is to compel the defendant to accept title to a lot of ground with buildings and improvements thereon in this city, bearing municipal number 3,316 St. Charles avenue, and situated in square bounded by St. Charles and Louisiana avenues and Toledano and Prytania streets.
Defendant refuses to accept the title because he fears that there may be a minor’s mortgage upon the property in favor of the plaintiff’s minor child, by reason of the fact that plaintiff’s husband, father of the child, has received $15,000 belonging to the child, and now holds same in the shape of bonds, and that article 3350, C. C., provides that:
“Before fathers and mothers, who by law are entitled to the usufruct of property belonging to their minor children, shall be allowed to take possession of such property and enjoy the fruits and revenues thereof, they shall cause an inventory and appraisement to be made of such property, and cause the same to be recorded in the mortgage book of every parish in the state where they or either of them have immovable property.”
Plaintiff and her husband are by law entitled to such usufruct, and, as this recordation would be a vain and useless trouble and expense unless its purpose was to preserve a legal mortgage in favor of the minor, the inference is strong that such would be its effect.
But by express provision of article 3312, C. C., “no legal mortgage shall exist except in the eases determined by the present Code”; and the Code nowhere “determines” that a legal mortgage shall exist upon the property of fathers and mothers who enjoy the usufruct of the property of their minor children.
Defendant fears that the Code does so “determine” by those provisions which impose a legal mortgage upon the property of tutors in favor of their wards; in other words, plaintiff likens fathers and mothers who enjoy the usufruct of the property of the minor children to tutors, and applies to them those codal provisions having reference to tutors.
But in the first place, even if the father in such a ease could be likened to a tutor, the mother could not. He receives and holds and administers the property of the minor, and owes an accounting; but she has no charge whatever of the property of the minor, and owes no accounting. See to that effect, article 221, C. C. Her sole and only coni nection with or participation in the matter is that as mother, and she shares with the father the enjoyment of the fruits and revenues of the property.
And, in the second place, fathers and mothers in such a case are not to be likened to tutors. That point was expressly decided by this court in the case of Cleveland v. Sprowl, 12 Rob. 172, and is the well-settled doctrine in France under the provisions of the Code Napoleon, which are exactly similar to those of our Code on this subject. See Darlington v. Turner, 202 U. S. 195, 26 Sup. Ct. 630, 50 L. Ed. 992, where Mr. Justice White was the organ of the court; and also the following authorities: Cass. 3 June, 1867; Aubry & Rau, Vol. 1, p. 505, § 123; Cass. 3 Dec., 1821; Riom, 23 May, 1822; *231 Lyon, 3 July, 1827; Potiers, 31 March, 1830; Toulouse, 25 Feb., 1845 (2 Jan., 1863); Bordeaux, 10 April, 1845; Nimes, 5 Feb., 1849; Grenoble, 4 Feb., 1850; Riom, 30 Aug., 1852; Aubry & Rau, Vol. 1, p. 501, d. 123; Demolombe, Vol. 6, n. 420; 4 Laurent, Vol. 4, n. 309; De Freminville, Vol. 1, n. 18; Toulouse, 26 Aug., 1818; Laurent, Vol. 4, n. 208; Lyon, 9 Aug., 1877; Bordeaux, 3 Jan., 1849; Laurent, Vol. 4, n. 316; Demolombe, Vol. 6, n. 436; Aubry & Rau, Vol. 1, pp. 504, 506, d. 123; Agen, 17 March, 1854; Zachariae, Vol. 1, d. 99; Marcade, Vol. 2, p. 157; Demolombe, Vol. 6, n. 408.
Laurent (Vol. 4) says:
“No. 309. Is the father as administrator subject to the legal mortgage which the law grants to the minor on the property of his tutor? * * * Can a legal mortgage exist without law? Common sense, as well as legal rules, say that the legal mortgage is of strict interpretation. The Civil Code gives it to the minor against the tutor’s property. It does not give it on the property of the father as administrator. Article 2121. That answers the question. If we examine the matter, we note the difference the law makes between both the legal administration and that of the tutor. A decree of Riom very clearly explains the reasons for which the Legislature did not grant a legal mortgage to the child during marriage. The child has as protectors, not only the father, with his vigilance, his care, and his experience, but also the mother, with her attentive and prayerful tenderness. So that, after the mother’s death, the child loses a protector and a part of the protection which safeguards its rights. The difference of position among the children leads to the difference in the precaution which the legislator takes to protect their pecuniary interests. Riom, 30 Aug., 1852; Dalloz, 1854, 2,227. What the legislator himself has not done can the interested parties themselves do? There is a case which presents no doubts. A bequest is made to a minor. Could the debtor require that the father as administrator give a mortgage on his property for the protection of the legatee or the heir? Evidently not. The debtor of the legacy needed no security. He made a valid payment into the hands of the father as administrator. As to the child, he has no right to a mortgage to protect him. The court of Toulouse so decided in a case where the father had agreed that an inscription should be made on his property. It ordered the cancellation of the inscription. There could be no inscription without a mortgage. Now the child had no legal mortgage. The inscription was then given without cause. Toulouse, 25 Feb., 1845; Dalloz, 1845, 4,438. Furthermore, we believe that the father could not submit his property to a mortgage, because it would be a derogation from the paternal power. It is from motives of public order that the legislator has exempted the father from a legal mortgage; so much so that particular conventions which establish a mortgage are stricken with nullity.”
Aubry & Rau (Vol. 1, § 123) says:
“The property of the father as administrator is not subject to the legal mortgage, which minors enjoy on the property of their tutors.”
[2] If, therefore, we bad to deal only with the provisions of the Code, we should have to conclude that said apprehended legal mortgage did not exist, and that the fears of the defendant were groundless. But there is also section 12 of Act No. 95, p. 117, of 1869, now section 2367, R. S., reading:
“Sec. 2367. Before fathers and mothers, who by law have administration of property coming to their minor children, shall be allowed to take possession of the same and enjoy the profits and revenues thereof, they shall cause an inventory to be made of such property, and cause the same to be recorded on the mortgage books of all the parishes where they or either of them may have any mortgageable property which recordation shall operate a mortgage on said property, until a final administration of said property.”
At first sight, it might appear doubtful whether this statute in speaking of fathers and mothers who by law have the administration of the property of their minor children might not have reference to fathers and mothers who are tutors and tutrixes of their children; but tutors and tutrixes do not “enjoy the profits and revenues” of the property of their wards, or, in other words, have not the usufruct thereof, but only fathers and mothers do; hence this statute has reference to fathers and mothers in their quality as such, and not in their quality as tutors. And, besides, if this section 2367 had reference to fathers and mothers in their quality of tutors, it would be utterly useless, mere idle surplusage, since in the preceding sections (2359 and 2366) ample, full, and complete provision has already been made for *233 the recordation of the inventory of the property of minors in the cases where fathers and mothers qualify as tutors of their children. Section 2367 could not be taken to be a mere idle repetition of the other sections.
[3] Now the only question must be whether the said section 2367 is not inoperative as being inconsistent with the above transcribed article 3312 of the Code to the effect that “no legal mortgage shall exist except in the cases determined by the present Code.” Does this mean that the provisions of the Revised Statutes creating legal mortgages are a mere dead letter, as if not written, unless repeated or reproduced, in the Code itself? We cannot think so. If it were so, then, by parity of reasoning, all the provisions of the Revised Statutes creating privileges would be a mere dead letter, unless reproduced in the Code; for article 3185 provides that “privilege can be claimed only for those debts to which it is expressly granted by this Code.” We think that these two articles are simply intended to express the idea that mortgages and privileges are stricti juris, in the sense that they do not exist unless expressly provided for by statute. These articles have no broader scope than this. They are not designed to repeal, abrogate, or nullify anything contained in the Revised Statutes. The aim of the revisers of our Codes and Statutes in 1870 was to include nothing in the Revised Statutes but would have full force and effect. Their aim and object was that these statutes should compose with the Codes a homogeneous body of laws. It is not to be supposed that they intended that all the provisions of these statutes creating mortgages and privileges that were not reproduced in the Code should be mere dead effete matter. True, they realized that some conflict between the Codes and Statutes might be possible on some minor points such as had escaped their attention, and that, in view of this possibility, they prudently provided, in the repealing clause of the statutes, that, in case of such conflict, the Codes should control; but they manifestly did not in this contemplate a conflict of such magnitude as the one now in question would be, whereby all the provisions of the statutes with reference to mortgages and privileges would be simply nullified unless reproduced in the Code.
We conclude, therefore, that full effect must be given to said section 2367, R. S., and that the legal mortgage in question does exist.
[4, 5] The inventory thus required by said section and by article 3350 of the Code to be recorded has never been recorded; and therefore defendant might perhaps be safe in accepting the title (since mortgages cannot affect third persons unless recorded, knowledge in such case, no matter how derived, not being equivalent to registry), but we cannot order him to do so; for it is the legal duty of the plaintiff to cause this mortgage to be recorded before undertaking to sell the property, and we cannot assume that she-will violate this legal duty. 'At any rate,, this court cannot lend her its aid for doing so; nay, give its sanction to it.
Judgment set aside and suit dismissed.