MONROE, C. J.
Relator was elected trustee of finance of the board of trustees of the city of Lafayette, and gave bond as required by the city charter (Act 310 of 1914, § 34) in the sum of $10,000 with the Fidelity & Deposit Company of Maryland as surety, which bond was inscribed in the mortgage office, to operate as a legal mortgage upon the property of the principal and surety. He applied to the district court, contradictorily with the recorder and the city, for a writ of mandamus directing the cancellation of the inscription, and prosecutes this appeal from a judgment rejecting his demand.
Section 35 of the city charter reads:
“The condition of such bond shall be to secure the city against financial loss or injury resulting from misconduct or malfeasance in office. If a personal bond is furnished the sureties must be residents of the parish of Lafayette, and the recordation of the personal bond in the mortgage records of Lafayette parish shall operate as a legal mortgage upon the property of the trustees and the surety or sureties, and it shall be the duty of the clerk of court to record the same: Provided [that] in lieu of this legal mortgage the principal may give a first special mortgage or mortgages upon property belonging to himself or others in an aggregate sum equal to the bond herein fixed; provided the property be unincumbered of title satisfactory to the city attorney and of value of one fourth above the sum for which it is thus mortgaged.”
At the time of the passage of Aet 310 of 1914 there were in force Act 41 of 1894 and Act 71 of 1004, which authorize certain corporations to become sureties on bonds required by law to be furnished and prescribe the conditions under which they may do so. Section 1 of the act of 1894, after designating in general terms the corporations to which the act is intended to apply, declares that any such corporation—
“may be accepted as sole and sufficient surety [or sureties] upon any bond, undertaking, or obligation, required or permitted to be made, given, tendered or filed with surety or sureties, by any law of this state, or the ordinances, rules, or regulations of any municipality, board, body, organization, or public officer in lieu of any surety or sureties now required by law; and such execution by such company of such bond, undertaking or obligation shall in all respects be a full and complete compliance with all the requirements of such laws, ordinances, or regulations that such bond, undertaking, or obligation shall be executed by one or more sureties, or that such sureties shall be residents, or freeholders, or either, or both, or possess any other qualifications. And such company shall be subject to all the liabilities and have all the rights of sureties under the provisions of law relating thereto, it being the true' intent and meaning of this act to enable corporations created for the above purposes to become and be accepted as sole surety on all bonds, undertaking's or obligations required or permitted by law or the rules, ordinances or z-egulations of any municipality, board, body, organization or public officer.”
Other sections of the act impose certain conditions upon the corporations referred to, and also upon the secretary of state with *261 reference to their financial responsibility, and section 6 provides that, when those conditions have been fulfilled and the secretary of state is satisfied upon that subject, he may issue-to any such corporation-—
“his certificate that it is authorized to become and be accepted as sole surety on all" bonds * * * required or permitted by law, * * * and such certificate shall be conclusive proof of its solvency and credit for all purposes, and of its right to be so accepted as such sole surety and its sufficiency as such.”
Acts 1904, No. 71, p. 185, § 1, requires all such corporations- doing business in this state to deposit with the state treasurer either $50,000 in money, or certain designated classes of public securities, to be approved by the secretary of state, to that amount, and to be so maintained, and—
“to be held subject to any claim, liens or judgments that may be judicially obtained against them in the courts of this state, or the federal courts in this state, or arising from any contract of insurance, or indemnity, or fidelity, of guaranty entered into in this state, and to be hable to seizure and sale at the instance of any judgment creditor of such companies, under judgment obtained in any of the courts of this state * * * against them.”
The repealing clause in the charter of the city of Lafayette purports to repeal only such laws or parts of laws as are in conflict with its provisions, and we find nothing in the acts of 1894 or 1904 which is thereby repealed, since they present no such conflict. They leave those who are required to furnisbonds at liberty to procure “personal” sureties, if they so prefer, and the charter of Lafayette extends the same privilege to its trustees, but declares- that:
“If a personal bond is furnished, the sureties must be residents of the parish of Lafayette, and the recordation of the personal bond * * * shall operate as a legal mortgage upon the property of the trustees and the surety or sureties,” etc.
And, it is a significant fact that the charter contains no provision requiring the recordation of a bond such as that here in question, or declaring that it shall operate as a mortgage either upon the property of the principal or the surety.
It is admitted, with respect to relator's surety, the Fidelity & Deposit Company of Maryland, that all the conditions required by law have been complied with, which includes the admission that the secretary of state has issued a certificate which the law declares- shall—
“be conclusive proof of its [the company’s] solvency and credit for all purposes, and of its right to be so accepted as such sole surety and its sufficiency as such.”
[1, 2] The purpose of the lawmaker, clearly, is to distinguish between the bonds authorized by the acts of 1894 and 1904, upon which certified corporations domiciled either in Louisiana or in other states may become sureties, and those which have always been, and are still, authorized, upon which individuals may become sureties, and, in the one case, to provide for the security of the obligees of the bonds by requiring the surety to keep on deposit in the state treasury cash or public bonds to the amount of $50,000, and, in the other case, by requiring that the sureties shall be residents of the parish, and that the bonds shall be recorded, and shall operate as mortgages upon their property and the property of their principals.
The learned counsel for defendants says in his brief:
“The law stipulates that the surety company tendered by the officer * * * shall be subject to all the liabilities and have all the rights of sureties under the provision of law relating thereto. It is a reasonable conclusion that the principal obligor, under this official bond, shall be subject to the same liabilities whether the surety be a person or a corporation having power to execute the bond. There is no good reason to infer that the liability of the principal obligor under such a bond, with a corporation as surety, has less liability than under a similar bond, with a person as surety. The object of the law in both cases is to protect the city and the public. And to say that a surety company bond does not operate as a mortgage against the property of the principal obligor, while the tender [registry] of personal bonds has that result, is to grant a privilege in favor of the officer without warrant of law, to the *263 possible disadvantage of the city and the public in some cases. Section 351 of the Revised Statutes provides that all bonds by public officers (whether state or parish) shall operate as a mortgage against the property of the principal obligor. This seems to exclude municipal officers, but it shows how jealously the law protects the interests of the people in such cases.”
The section of the Revised Statutes thus referred to contains the following language, which seems to confine its application to bonds required of state and parish officers, to wit:
“The bonds of all state officers to be made payable to the Governor of the state, and those of the parish officers to the president of the police jury of the parish.”
There is no mention of bonds required of municipal officers; and whether it would affect the question here presented if such bonds were also mentioned we need not decide.
The argument of defendant’s counsel concedes that relator might have given either the bond provided for by ,the acts of 1894 or 1904, or that provided for by section 35 of the city charter; and yet he contends that unless, in the one case as well as the other, the bond is allowed to be recorded and to operate as a mortgage upon the property of the principal, a privilege is granted in favor of the principal npon the one bond without warrant of law and to the possible prejudice of the city of Lafayette and the public. The answer is that, in order that a bond may be recorded and may operate as a mortgage, there must be some law which so declares, and that, whereas the charter of the city of Lafayette declares that a personal bond (meaning a bond with individual sureties) given by a trustee may be so recorded and may so operate, it is silent concerning the recording and operation as a mortgage of a bond with a surety company as surety, and we have been referred to no other statute, and know of none, containing such provision.
A mortgage, like a privilege, can be brought into existence only by authority of law, and not by reasoning from analogy. C. O. arts. 3185, 3312; Sewall v. Duplessis, 2 Rob. 66; Cleveland v. Sprowl, 12 Rob. 172; Shaw v. Grant, 13 La. Ann. 52; Hatcher v. Jackson, 21 La. Ann. 740; Aaron v. Bayon, 131 La. 228, 233, 59 South. 130; Hen. Dig. verbo Privilege, 1, No. 3.
It is therefore ordered that the judgment appealed from be annulled, and that there be judgment in favor of plaintiff and against defendants as prayed for by plaintiff; the defendant the city of Lafayette to pay all costs.