168 So. 493

COOK v. MYRICK et al.

No. 33361.

April 27, 1936.

Rehearing Denied May 25, 1936.

Goff & Goff, of Arcadia, for appellants.

P. E. Brown and Bertram F. Barnette, both of Arcadia, for appellee.

HIGGINS, Justice.

Plaintiff, a conventional mortgage creditor, instituted this suit against Mrs. Carrie E. Myrick, mortgage debtor, and her two sons, now majors, for whom she acted as natural tutrix during their minority, seeking to have the sheriff make a return on a writ of seizure and sale showing no sale of the property on November 4, 1933; to cancel the judgment rendered in favor of the minors, homologating the final account between the tutrix and them, on the ground that the judgment had been obtained by fraud; to cancel the legal mortgage in favor of the minors against their mother, resulting from the recordation of the abstract of inventory made of the assets and property in the tutorship proceedings, on the ground that the claims of the minors have been paid and liquidated; and, in the alternative, to reduce the amount of the minors' mortgage against the property involved to the amount shown by the original recorded certificate of inventory, and to declare the conventional mortgage superior in rank to the minors' mortgage for any amount in excess of that shown in the original recorded certificate of inventory.

The defendants answered, denying that the plaintiff was entitled to the relief sought and, in the alternative, in the event the court should reduce the amount of the judgment homologating the final account to the amount of the original certificate of inventory, that they be allowed a reasonable time in which to place, in the hands of the sheriff, the difference between the amount of their bid of $3,000 and the amount that the court might declare primed the conventional mortgage.

The sheriff answered stating that he had no interest in the issues presented and submitted the case on the record for judgment.

There was judgment in favor of the plaintiff on the alternative demand, reducing the amount of the minors' claim to the sum of $476.90 each, or the amount of their respective interests as shown by the original recordation of the abstract of inventory, and ordering the sheriff to make an appropriate return on the writ of seizure and sale in the foreclosure proceedings between plaintiff and Mrs. Carrie E. Myrick, upon the payment by the two sons of the difference between the recognized amount of their claims and the $3,000 bid for the property.

A new trial was denied, and the defendants appealed.

The record shows that P. O. Myrick died on September 8, 1916, leaving a surviving widow in community, one of the defendants herein, and ten children, three of whom were majors and seven of whom were minors, including the two defendant sons herein. The mother was appointed as nat-

ural tutrix, and A. M. Myrick as undertutor for the minors, and letters of tutorship were regularly and properly issued. The assets of the succession were appraised in the inventory at the sum of $9,538, of which the widow owned one half and the children the other half, in the proportion of one-tenth each. The interest of the minors in the property inventoried was valued at the sum of $3,338.30, and a certificate to that effect was filed and recorded on March 6, 1917, in the mortgage books of Bienville parish where the farm consisting of 440 acres was located.

From time to time the mother acquired the interest of all of the heirs in the property as they reached the age of majority, except the two defendant sons herein, who, being the two youngest children and minors, retained their interest. One of the boys became of age on December 9, 1930, and the other was emancipated and became of age on May 27, 1934.

On January 17, 1930, the widow placed the conventional mortgage on all of the property in favor of the plaintiff for the sum of $1,500, payable in equal installments one and two years after date, with interest at 8 per cent.

In April, 1933, plaintiff foreclosed the mortgage for the balance of $1,250, plus interest and attorney's fees, in executory process proceedings and the widow had the matter postponed under the moratorium statute.

On September 23, 1933, there was a judgment homologating the final account between the tutrix and her two sons, recognizing their claims against their tutrix in the sums of $1,563.93 and $1,589.13, respectively, and the judgment was recorded the same day, recognizing the legal mortgage in favor of the minors, resulting from the recordation of the original abstract of inventory recorded in Book S, page 24, of the Mortgage Records of Bienville Parish, for the purpose of enforcing the judgment against all of the property owned by the tutrix, according to law.

On November 4, 1933, eighteen twentieths of the property owned by the widow was sold in the executory process proceedings, in accordance with the previous advertisements and instructions by the plaintiff to the sheriff. The two defendant sons being the last and highest bidders in the sum of $3,000, the property was adjudicated to them at that price. The purchasers did not pay the amount of their bid to the sheriff, but insisted that they were entitled to have the amount of their respective claims approved in the judgment homologating the final account, credited against the amount of their bid, since their legal mortgage was superior in rank to the plaintiff's conventional mortgage.

Plaintiff then obtained an order from the district judge against the purchasers and the sheriff to show cause why the sale to them should not be canceled, but these papers, although service was accepted on them by the defendants, were never filed in the clerk's office. The present suit, which was filed on November 25, 1933, followed.

The first contention of the plaintiff, that the sheriff should be compelled to

make a return on the writ of seizure showing no sale on November 4, 1933, is without merit, because all of the proceedings up to and including the adjudication to the two purchasers were regular and legal. The only controversy is as to their right to credit the full amount of their claims against their bid.

■ Plaintiff prayed that the judgment homologating the final account be annulled on the ground of fraud, because it was padded and is an attempt on the part of the mother and the two sons to give them an undue perference over other creditors.

The recordation of the abstract of inventory was made at an unsuspicious time and was in accordance with the provisions of articles 321 and 322 of the Revised Civil Code.

Article 275 of the Revised Civil Code and articles 998 and 999 of the Code of Practice require the tutrix to render a final account to the minors upon reaching their majority. The account appears to be regular, was approved by the undertutor, and was homologated by judgment of court in the customary and legal way. It was shown that the respective amounts allowed in the judgment of homologation, over and above the original amount due the minors as shown by the abstract of inventory, resulted from several sales of pieces of property and timber located thereon, all of which sales were authorized and made upon the advice of the family meetings and judgments of court.

The evidence is indisputable that the minors received no part of the amount due them from these various cash sales. Those sales are all of record and show that on September 6, 1920, the mother sold a right of way across the land to the Mansfield Hardwood Lumber Company for the sum of $600 cash, the act being recorded in Book 64, p. 24. On January 7, 1922, she sold to the same company the timber on the property in the sum of $15,000 cash, the act being recorded in Book 70, folio 204. On April 18, 1931, she sold certain timber to Ben. O. Gray tor the sum of $450 cash, the act being recorded in Book 95, p. 197. On October 31, 1933, she sold certain land to J. R. Myrick, for the sum of $1200 cash, act being recorded in Book 75, p. 590. On October 31, 1933, she sold another portion of the land to Ernest O. Myrick for the sum of $600 cash, the sale being recorded in Book 75, p. 599. On October 31, 1933, she sold a piece of the land to H. J. Myrick for the sum of $800 cash, the act being recorded in Book 75, p. 599. On January 6, 1929, she sold another piece of land to J. R. Myrick for the sum of $1,150 cash, the deed being recorded in Book 88, folio 313. The account also shows the value of their one-half interest in certain movable property and contains an item of 5 per cent. interest on the amount due the minors from the respective dates that the tutrix received the cash to the time of the final account. The evidence, therefore, clearly negatives any idea of padding the account.

■ The third point is that, if the tutrix were credited with the amount that she

spent for the maintenance and education of her two children, the full amount of their claim would have been paid. The evidence shows that, being the widow in community, the mother had the usufruct of the farm and that her children worked industriously with her by operating it. The record of the tutorship proceedings shows that there was never any attempt made to have the tutrix authorized, with or without the advice of a family meeting, to spend the capital or principal of the minors for ·their subsistence, clothing, and education, as required by article 350, R.C.C. She testified that she felt it was her obligation to spend her own funds for that purpose and that she had done so. She considered that the labor and services of her boys in working on the farm sufficiently justified her in maintaining and educating them out, of the funds received from the operation of the farm. Under these facts and the law, any one dealing with the property on which the minors had their legal mortgage was apprised of the fact that the tutrix had not been authorized to spend the capital or principal of the minors for their support and education and, therefore, knew that, having failed to comply with article 350 of the Revised Civil Code, the tutrix could not legally credit those amounts against the minors' claims. The third ground is untenable. Apparently this was the conclusion of the trial judge on these issues, because he only sustained the fourth or alternative demand, which we will now consider.

It will be recalled that the abstract of inventory was recorded on March 6, 1917, the plaintiff's conventional mortgage was recorded January 17, 1930, and the judicial mortgage resulting from the homologation of the final account of the tutor was recorded on September 23, 1933. Counsel for plaintiff, therefore, contends that the minors' legal mortgage resulting from the recordation of certificate of inventory would out rank his conventional mortgage to the amount stated in the certificate of inventory, but that the judicial mortgage, having been recorded subsequent to his conventional mortgage, is inferior in rank.

Counsel for the defendants contend that the legal mortgage resulting from recording the abstract of inventory, which was recorded prior to the time plaintiff's conventional mortgage was recorded, secures the amount of the minors' interest and claims adjudged to be due in the final accounting between the tutor and the minors.

■ The legal mortgage in favor of the minors resulting from the recordation of the abstract of inventory affects all of the property owned by the tutor at the time of and acquired subsequent to his appointment. Skipwith v. Glathary, 34 La.Ann. 28, 35; Saunders' Lectures on the Civil Code, pp. 61 and 62; R.C.C. art. 3351; R. S. 2360, Marr's R.S., vol. 2, p. 1639, § 4680.

■ Articles 321, 322, 3314, and 3351 of the Revised Civil Code read, respectively, as follows:

"321. In the several cases in which the tutor is not required by law to give bond, it shall be the duty of the clerk of the district court of the parish in which the ap-

pointment is to be made, to furnish a certificate of the amount of the minor's property according to the inventory on file in his office. This certificate must be recorded in the mortgage book of the parish in which the tutor resides; and a certificate to that effect, signed by the recorder of mortgages, must be presented to the judge before he can make the appointment, or authorize letters of tutorship to be issued."

"322. The recording of the bond or certificate of the clerk as herein provided, shall operate as a legal mortgage in favor of the minor for *the amount therein stated,* on all the immovable property of the tutor." (Italics ours.)

"3314. Minors, persons interdicted and absentees, have a legal mortgage on the property of their tutors and curators, as a security for their administration, from the day of their appointment until the liquidation and settlement of their final account.

"And the tutors and curators of such persons have a like mortgage on their property, as a security for the advances which they may have made."

"3351. Whenever any person shall apply to be recognized, confirmed or appointed as tutor, or shall have been recommended by a family meeting, the judge shall order, and it shall be the duty of such applicant to cause a true and faithful inventory to be made of the movable and immovable property, credits, deeds and papers belonging to the minor, and to cause the said property to be valued by two appraisers, appointed by the judge, and duly sworn.

"This inventory shall include the property situated out of the parish, as well as that within the parish where the appointment is to be made.

"After the inventory has been completed, the judge shall fix the amount of the bond which the tutor is bound to give.

"This bond must be recorded in the mortgage book of the parish in which the tutor resides, and a certificate to that effect, signed by the recorder of mortgages, must be presented to the judge before he can make the appointment, or authorize letters of tutorship to be issued.

"In the several cases in which the tutor is not required by law to give bond, it shall be the duty of the clerk of the district court of the parish in which the appointment is to be made to furnish a certificate of the amount of the minor's property, according to the inventory on file in his office. This certificate must be recorded in the mortgage book of the parish in which the tutor resides; and a certificate to that effect, signed by the recorder of mortgages, must be presented to the judge before he can make the appointment, or authorize letters of tutorship to be issued.

"The recording of the bond, or certificate of the clerk, as herein provided, shall operate as a legal mortgage in favor of the minor *for the amount therein stated,* on all the immovable property of the tutor.

"The tutor shall, within thirty days after his appointment, cause such bond or certificate to be inscribed in the mortgage book of every other parish in the State in which he owns immovable property.

"It shall be the duty of the undertutor to see that these inscriptions are made according to law." (Italics ours.)

It will be noted that a true and faithful inventory of all of the assets of the minors shall be made and the property valued by two appraisers appointed by the judge and not by the officer taking the inventory, as in the usual succession proceedings where there are no minors. The total amount of the inventory is the gross value of the estate and not the net value. In other words, the debts are not deducted from the amount of the assets, as is the case where there is a liquidation of the affairs between the minor and the tutor, a proceeding indispensable in giving a special mortgage in lieu of a general one. The purpose of the appraisement and inventory is to fix the amount of the minors' legal mortgage. If the tutor owned $100,000 worth of property and the minor only had $1,000 of assets, while the minor's mortgage would operate against the whole of the property of the tutor, it only does so to the extent of the amount recorded, or $1,000. On the other hand, if the security is inadequate on account of an increase in the value of the assets of the minor, or additional assets intrusted to the tutor, the tutor or undertutor, or any relation of the minor, can have the amount of the minor's mortgage increased. R.C.C. arts. 318, 324, 3351, and those cited supra.

If a low appraisal were placed upon the effects of the minors, it would appear that the tutor or undertutor, or any relation of the minor, might, in a proper proceeding, call the matter to the attention of the district judge, who would have authority to order a reappraisal of the property, if he determined that it was necessary, in order to protect the minors' interest. The abstract of the supplemental inventory could then be recorded, which would have the effect of increasing the amount of the minors' mortgage. The appraised value is prima facie correct but not conclusive. Succession of Mrs. Nina Vance, 183 La. 760, 164 So. 792.

It has been held that an inventory is indispensable to determine the amount of the tutor's bond. Succession of Baumgarden, 35 La.Ann. 127, 131.

The law does not favor tacit mortgages. Articles 3322, 3329, 3342, and 3347, Revised Civil Code, read as follows:

"3322. The judicial mortgage takes effect from the day the judgment is recorded in the manner hereinafter directed."

"3329. Among creditors, the mortgage, whether conventional, legal or judicial, has force only from the time of recording it in the manner hereinafter directed."

"3342. Conventional mortgage is acquired only by consent of the parties, and judicial and legal mortgages only by the effect of a judgment or by operation of law.

"But these mortgages are only allowed to prejudice third persons when they have been publicly inscribed on records kept for that purpose and in the manner hereafter directed."

"3347. No mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated."

Articles 322 and 3351, R.C.C., expressly and specifically provide that the recordation of the abstract of inventory shall create a legal mortgage in favor of the minor *"for the amount therein stated, on all the immovable property of the tutor."* But it is said that, under the provisions of article 3314, the legal mortgage of the minors secures the amount shown to be due them on the final liquidation over and above the amount stated in the abstract of inventory. This is true with reference to the claim of the minor against the tutor, for the minor's mortgage does remain in effect during the entire tutorship administration, but the rights of third persons dealing on the faith of the public records are governed by the amount of the minor's recorded mortgage. Aaron v. Bayon, 131 La. 228, at page 234, 59 So. 130.

The same legal question presented here was decided in favor of the conventional mortgage creditor in the Succession of Henry v. Kuntz, 34 La.Ann. 852. In that case, a dative tutor was appointed to represent the minors and furnished a tutor's bond in the sum of $5,000. Later, the rights and interest of the minors in the succession of their father were liquidated and reduced to the sum of $1,365, on the application of the tutor, upon the advice of a family meeting, so as to permit the substitution of a special mortgage for the sum of $1,365, in lieu of the general mortgage. This special mortgage was executed on April 24, 1869, and an order was then granted canceling the general mortgage. On April 26, 1869, the dative tutor gave a second mortgage on the property for the sum of $2,000, of which the plaintiff later became the owner. On September 3, 1879, there was a final account between the tutor and judgment was rendered against him for the sum of $1,-721.88. Under this judgment, the mortgaged property was seized and adjudicated to the plaintiff, the conventional mortgage holder, for the sum of $2,600. Plaintiff then took a rule against the children, who were then majors, to show cause why the plaintiff should not be entitled to receive the price of the adjudication less $809.48, admitted to be due the children as heirs of their father. The admitted balance was the difference between the amount of the special mortgage in their favor for $1,365 and $555.48, which they had previously collected under execution against the tutor. Plaintiff claimed the amount collected should be imputed against the amount of the minors' mortgage and thereby reduce it pro tanto. The district judge held that the heirs or children were entitled to receive out of the proceeds of the sale the sum of $1,720.98, representing the amount of their execution and costs and that the plaintiff was entitled to the balance or residue. Plaintiff appealed.

The court, in reversing the judgment of the district judge, pointed out that, while the minors had a legal mortgage on the tutor's property to secure his administration from the time of his appointment until the liquidation and settlement of his final account, under article 3282 of the Revised Civil Code, that there was another article of the Civil Code, i. e., article 331, which gave the tutor the right to give a special mortgage in lieu of the general mortgage, and

that under the express provisions of the latter article, the amount of the mortgage was predicated upon the amount ascertained by previous liquidation and included "all interests which might probably accrue." At page 855 of 34 La.Ann., the court said:

"We are of opinion that, whatever might be the indebtedness of the tutor to the minors on his final settlement, under the operation of the present laws on the subject, it could not be enforced against third persons beyond the amount of the mortgage, whether general, legal or special, recorded against the tutor. And the authorities to which we are referred as sustaining a different principle, are authorities without force under the radical change on the subject of minors' mortgages, inaugurated by the Constitution of 1868 and the Statutes under it, and confirmed by subsequent jurisprudence."

Counsel for the defendants rely upon the following authorities: Life Ass'n of America v. Hall, 33 La.Ann. 49, 55, and Nielson Co. v. Siess, 141 La. 366, 75 So. 82. These cases are not apposite, because, in the first one, it does not appear that the amount of the minors' mortgage stated in the abstract of inventory was less than the amount shown to be due the minors on the final liquidation; and it was an attempt to refer the minors' mortgage to the proceeds of the sale and cancel the mortgage on the property. The court recognized the effectiveness of the minors' mortgage on the property, but later, in the case of Koehl v. Solari, 47 La.Ann. 890, 17 So. 464, this court held that in a partition proceeding between minors and majors, the mortgage could be legally canceled against the property, provided the whole of the purchase price was placed in the registry of the court, so that the tutor, before taking possession of the minors' share, could offer additional security or invest the funds under the supervision of the court. In the instant case, the district judge recognized the minors' mortgage for the full amount recorded.

The Nielson Case is not in point, because there a creditor attempted to reduce the amount of the recorded minor's mortgage on the theory that the amount had been inflated for the purpose of protecting the tutrix's property from her creditors. The court declined to make any reduction, holding that such action would be equivalent to the removal of the mortgage, which could only be done by substituting a special one therefor.

For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C.J., absent.