**19 So.2d 129**

**STATE ex rel. DANZIGER v. RECORDER OF MORTGAGES FOR PARISH OF ORLEANS et al.**

No. 37412.

June 26, 1944.

Benjamin Y. Wolf, of New Orleans, for defendants and appellants.

A. D. Danziger, of New Orleans, for relator-appellee.

HAMITER, Justice.

George Danziger, a qualified and licensed auctioneer in and for the Parish of Orleans and the relator in this mandamus proceeding, seeks to compel the Recorder of Mortgages of Orleans Parish to cancel and erase from the mortgage records the inscription of his (relator's) personal bond (not a bond signed by a surety company) given by him as auctioneer, or, in the alternative, to cancel and erase its inscription on a mortgage certificate heretofore issued and to omit it on any and all future mortgage certificates applied for in relator's name.

From a judgment in favor of relator, making the alternative writ of mandamus

peremptory and granting his alternative demands, appeals were effected by the respondent recorder of mortgages and by the other parties impleaded, the State Auditor and the State of Louisiana.

The statutory provisions of this State that deal specifically with auctioneers are to be found in Dart's General Statutes, Vol. 1, beginning with section 470. Those particularly applicable here are the following:

"470. Qualifications—Requisites—Authority.—Any citizen of the state may become an auctioneer for the parish in which he is a qualified voter, and be authorized to sell any real or personal property at public auction, upon giving bond and security, according to law, and taking the oath prescribed by law. (R. S., § 139.)

"471. Bonds which must be given.—Before entering on the discharge of his duties, he shall execute his bond according to law, with good and solvent security, in favor of the auditor of public accounts of the state of Louisiana, conditioned for the faithful performance of all the duties required by law towards all persons who may employ him as auctioneer, and for the prompt payment of all taxes or commissions payable to the state, and of all sums which he shall receive in his official capacity belonging to other persons. And it shall be the duty of the district attorney of the parish in which said auctioneer resides to test the bonds so given by said auctioneers every second year in the same manner in which bonds of notaries public are now tested. (R. S., § 140; Acts 1908, No. 45.)

"472. Amount of bond.—The bonds to be given shall be in the following amounts: Ten thousand dollars for the city · and parish of Orleans and two thousand dollars for the other parishes .of the state. (R. S., § 141.) * * *

"475. Annual license.—Every auctioneer shall take out an annual license from the auditor of public accounts authorizing him to do and perform all the business properly belonging to an auctioneer. (R. S., § 142.)"

The foregoing recitals, it will be noticed, do not provide for the recording of the auctioneer's bond in the mortgage records and the resulting creation of a mortgage on the principal's property. Further, in this connection, we observe that legal mortgages are stricti juris and can exist only when created by law. R. C. C. Article 3312; Aaron v. Bayon, 131 La. 228, 59 So. 130.

But appellants insist, and their sole defense to this action is, that relator is a public officer, and, as such, he is governed by the provisions of Section 351 of the Revised Statutes, as last amended by Act No. 180 of 1928, which require the registering of bonds of public officers and declare the existence of legal mortgages by reason of the registration. These provisions read:

"All bonds given by Tax Collectors of this State and by persons charged with the collection of parishes taxes, and by all public officers, whether State or Parish, (except the State Treasurer, the Auditor of Public Accounts, Parish Recorders and Clerks of the District Courts,) who, by ex-

isting laws or those hereafter to be enacted, may be required to give bond, shall give bond with security residing within the Parish where the officer exercises the functions of his office; provided that this shall not operate to prevent any of the said officers from giving bond in any reputable and reliable surety company, which bond shall be accepted by the Parish Recorder, the Clerk of the District Court, and the President of the Police Jury, or any two of them, in the absence of the third, in all the parishes except in the City of New Orleans, where that duty shall be performed by the Recorder of Mortagages in and for the Parish of Orleans, within thirty (30) days from the date of their commissions, and before entering upon their duties; the bond shall be authenticated by the attestations of two witnesses and the signature of the Recorder, and shall also be recorded in a separate book, to be kept for that purpose, and shall also be registered in the mortgage records of the several parishes where the principal obligor may own real estate. The bonds, when so registered, shall operate from and after the date of the registry as a mortgage upon all of the real estate of the principal obligor therein, except that bonds signed by surety companies heretofore, or hereafter given, shall only be recorded in the parish where the said officer resides and, in which case, it shall not operate as a mortgage on any property which may be owned by said officers.

"The bonds of the State Officers shall be made payable to the Governor of the State of Louisiana, and those of the Parish officers, to the President of the Police Jury of the Parish."

Thus there is presented by these appeals the question of whether or not an auctioneer is a public officer within the meaning and contemplation of that statute.

In 46 C. J., verbo Officers, Section 3, with reference to the term "Public Officer", it is said: " * * * The courts, however, have questioned the possibility of framing a definition which will meet the requirements of all cases which may be presented, although many definitions have been attempted. Because of the variety of meanings or shades of meaning in which the terms 'office' and 'officer' may be employed, in determining whether or not a given employment is an office within the meaning of a particular statute or other written law, each case must be determined by a consideration of the particular facts and circumstances involved, and of the intention and subject matter of the enactment. The nature of the duties, the particular method in which they are to be performed, the end to be attained, the depositary of the power conferred, and the whole surroundings, must all be considered when the question as to whether a position is a public office or not is to be solved. * * * *"

This principle was enunciated in State v. Dark, 195 La. 139, 196 So. 47, 49, the following language being therein used: "From a study of the authorities cited by counsel, as well as a review of the text writers and other authorities on the subject, we find that the courts have differed in de-

ciding what is a public office and who are public officers principally because of the difficulty they have experienced in applying these terms to the many ramifications into which they branch and to the particular facts and circumstances of each case. In other words, the courts have not been able to arrive at a definition that will, faultlessly, fit all cases. They have been compelled, rather, to decide whether, in the case under consideration, the position of a given person comes fairly within the constitutional or legislative intendment and contemplation, their conclusions varying, of course, with the different constitutional and legislative provisions in the respective jurisdictions and the nature of the respective cases.   *   *   *"

Consequently, in correctly determining the issue here presented, we must give consideration to the particular facts and circumstances involved, including the nature of the duties of the auctioneer.

The bond of an auctioneer, pursuant to the requirement of Section 140 of the Revised Statutes as amended by Act No. 45 of 1908, is payable to the Auditor of Public Accounts of the State of Louisiana. On the other hand, under the statute relied on by appellants (Section 351 of the Revised Statutes as last amended by Act No. 180 of 1928) bonds of state officers are required to be made in favor of the Governor, while those of parish officers in favor of the president of the police jury of the parish. The existence of this distinction or difference, obviously, is not due to inadvertance on the part of the lawmakers. The Legislature in 1908, by Act No. 45,

deliberately amended Revised Statute Section 140, which previously named no bond obligee, so as to provide that the auctioneer's bond be executed in favor of the Auditor of Public Accounts.   When that was done there was in effect Section 351 of the Revised Statutes (relied on by appellants) requiring bonds of public officers to be made payable to the Governor or to the president of the parish police jury.  If the Legislature had considered that auctioneers were public officers, as contemplated by said Section 351 of the Revised Statutes, the Auditor of Public Accounts would not have been designated as the obligee of the auctioneer's bond; rather the Governor, it seems to us, would have been so named.

In State v. Dark, quoted from supra, we further said: "The best general and most concise definition we have been able to find of what is a public office and who are public officers is that given by Mechem in his work on Public Officers, viz.: 'A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.  The individual so invested is a public officer.'   Section 1, page 1."

Section 1-b of 7 C.J.S., verbo Auctions and Auctioneers, says: "An auctioneer is one who sells goods at public auction for another on commission, or for a recompense; one who conducts a public sale or

auction, whether the goods sold are his own or those of another person who employs him."

And Section 2 of that authority and title states: "Selling goods or any property at public auction has been declared legitimate and a common right, and the business of conducting auctions or acting as an auctioneer has been declared a lawful and legitimate one, not subject to arbitrary interference, and a common right. However the right to sell goods at public auction is not an absolute one, but is rather a special privilege, which can be withheld unless reasonable regulations are complied with, and the business of an auctioneer is affected with a public interest and subject to legislative restriction and regulation, in order to prevent abuses and frauds; thus, a state legislature may impose such limitations or regulations upon the acts of an auctioneer or the conduct of auction sales as may be reasonable, that is, not wholly arbitrary, reasonable regulations being within the police power, and reasonable ordinances adopted by municipalities for such purpose are likewise valid, under the police power granted to municipalities by the state.

"On the other hand, auctioneering being, as previously stated, a lawful business, neither the legislature of a state nor that of a municipality has the power to prohibit such business; the right to regulate and license the business does not include the right to prohibit it, directly or in effect, or to adopt unreasonable and unfair regulations, or such regulations as would be

oppressive or highly injurious to the business."

With these extracts as a basis, it can be correctly held, we think, that an auctioneer is not an officer of a state, parish or municipality; he is merely a private citizen who conducts a business or trade that is subject to be reasonably regulated by the Legislature. Some of the reasonable regulations that have been imposed on him for the benefit of the public are those relating to his bond, oath and license. He is not invested with a portion of the sovereign functions of the government, to be exercised by him in the public's behalf; he holds, by reason of his contractual relationship with those he represents, only the authority of selling at public auction for another, this being done on a commission basis or for an agreed recompense.

On this last point the district judge, in his well-considered written reasons for judgment, appropriately commented:

"An auctioneer is employed by private individuals, and when he is employed by these private individuals, that becomes a private contract, and his compensation for services rendered in that instance is not fixed by the Legislature, but it is fixed by the Auctioneering Exchange. When an auctioneer is named in some judicial proceedings, partition or otherwise, the court has not the authority to name the auctioneer; but that authority to name the public auctioneer is vested in the litigant, the litigant being the one who pays him his compensation. The district court names the

auctioneer only in the event that the litigants cannot agree on one.

" * * * He is not, therefore, a public servant in the sense that he has a general public duty to perform to the State or the subdivisions of the State, the parish, the municipality, or the public at large. His duty is related entirely to those who employ him, and after the private employment his duty is to make payment to the State of whatever is due by way of commissions or taxes, if any."

The fact that the auctioneer is required by law to collect for, and pay over to, the state certain duties, commissions or taxes (Section 145 of Revised Statutes as last amended by Act No. 315 of 1942) does not constitute him an officer of the state. His handling of public funds of that character is similar to the collection by the corner grocer of the sales tax and the paying of it to the state, as the law requires. Certainly, the latter, in the discharge of the mentioned duty imposed on him, is not to to be considered a public officer.

Appellant's counsel say that a notary public is an officer of the state; and from this premise they argue that because of the great similarity existing between the statutory provisions relating to auctioneers and those concerning notaries public an auctioneer is likewise an officer. Assuming for the sake of argument, but not deciding, that a notary public is a public officer, it can be correctly said that he does not acquire that status by merely taking the oath, furnishing bond and being licensed, as does the auctioneer in qualifying. To serve as

a notary public, in addition to those stated requirements, one must obtain a certificate from a designated court declaring his competency to exercise the profession of notary public, and further he must be appointed and commissioned by the Governor.

It is our conclusion, therefore, that an auctioneer is not governed by the provisions of Section 351 of the Revised Statutes, as amended by Act No. 180 of 1928. His is merely a legalized and licensed trade or business, not a public office; it is one which the Legislature can and does, under the police power of the state, regulate in the interest of the general public good.

For the reasons given the judgment is affirmed.

PONDER, J., takes no part.