175 So. 475

**In re MONROSE et al.**

No. 34313.

May 24, 1937.

Rehearing Denied June 21, 1937.

Benjamin Y. Wolf, of New Orleans, for appellant William P. Hickey, recorder of mortgages for parish of Orleans.

Charles J. Rivet, of New Orleans, for appellee Mrs. Gladys Howcott Monrose.

HIGGINS, Justice.

Mrs. Gladys Howcott, wife of Peter R. Monrose, Sr., brought proceedings against the recorder of mortgages for the parish of Orleans, and her husband, to cancel and erase from the mortgage records an inscription purporting to be a legal mortgage against her, resulting from the recordation of an abstract of an inventory by her husband, who was acting as administrator for their two minor children, who had inherited certain money from a third person.

The husband, as administrator of the estate of his minor children, made no defense.

The recorder of mortgages filed an exception of no cause of action on the grounds that under the provisions of articles 216, 223, 224, 3350, and 3357, Revised Civil Code, as interpreted by this court in the case of Aaron v. Bayon, 131 La. 228, 59 So. 130, the father and mother enjoyed the usufruct of their children's estate until their majority or emancipation, and, before being entitled to take possession of their property and enjoy the fruits and revenues thereof, were required to cause an abstract of the inventory and appraisement of the property to be recorded in the mortgage office of every parish in the state where they or either of

them own immoveable property and that the recordation thereof creates a legal mortgage in favor of the minors. The recorder also filed an answer reiterating the same issues.

There was judgment in favor of the wife, overruling the exception and ordering the inscription to be erased in so far as it affected her property and prohibiting the recorder from reporting the inscription on any certificate applied for in her name. He has appealed.

Since the case is presented on an exception of no cause of action, all well-pleaded facts must be accepted as true. They are as follows:

In 1929, Peter R. Monrose, Sr., presented a petition to the civil district court for the parish of Orleans, alleging that his two minor children, issue of his existing marriage with Gladys Howcott, were possessed of assets within the jurisdiction of the court; and that under article 221 of the Revised Civil Code, he was the administrator of their estate, but could not obtain possession thereof until he complied with the provisions of section 12, Act No. 95 of 1869. He prayed that an inventory and appraisement of the property of the minors be made; that an abstract thereof be recorded in the mortgage office; and that the assets of the minors be ordered delivered to him for administration. In due course, the inventory was filed and the deputy clerk of the court issued a certificate to be recorded in the mortgage office, reading as follows:

"This is to certify, That on the 24th day of Oct. 1929, an application was made before this Court by Peter R. Monrose, Sr., husband of Gladys Howcott, praying for the ad-

ministration of the estates of his minor children, Peter R. Monrose, Jr. and Elizabeth Howcott Monrose and that according to an inventory taken by Kenneth C. Barranger, Notary Public, on the 30th day of Oct. 1929, and filed in this Court on the 30th day of Oct. 1929, the property belonging to said minors or in which they have interest is appraised as follows:

"Peter R. Monrose, Jr. ........ $24,000.
"Elizabeth Howcott Monrose .. 22,000."

This certificate or abstract of inventory was properly recorded on October 30, 1929. Letters of administration were issued to the father and he was placed in possession of his children's estate.

The wife did not join her husband in any of the proceedings concerning his appointment and recognition as administrator. In 1937, she sought to sell a parcel of real estate belonging to her separate estate. Upon application for a mortgage certificate in her name, the recorder of mortgages reported as a legal mortgage against her separate property the inscription of the abstract of inventory under which her husband, alone, obtained the administration of the assets of the minors, the recorder insisting that this recordation operated as a legal mortgage not only against the property of the husband, but also against the separate property of the wife.

The title of Act No. 95 of the Legislature of 1869, reads as follows:

"To carry into effect article one hundred and twenty-three of the Constitution, and to provide for recording all mortgages and privileges."

Section 12 of the act, now section 2367, Revised Statutes, provides:

"That before fathers and mothers, who by law have administration of property coming to their minor children, shall be allowed to take possession of the same and enjoy the profits and revenues thereof, they shall cause an inventory to be made of such property, and cause the same to be recorded on the mortgage books of all the parishes where they or either of them may have mortgageable property *which recordation shall operate a mortgage on said property, until a final settlement of the administration of said property."* (Italics ours.)

Article 123 of the Constitution of 1868 referred to in the foregoing quoted title of the act of 1869, reads as follows:

"The general assembly shall provide for the protection of the rights of married women to their dotal and paraphernal property, and for the registration of the same; but no mortgage or privilege shall hereafter affect third parties, unless recorded in the parish where the property to be affected is situated. The tacit mortgages and privileges now existing in this State shall cease to have effect against third persons after the 1st day of January, 1870, unless duly recorded. The general assembly shall provide by law for the registration of all mortgages and privileges."

Article 3350 of the Revised Civil Code of 1870 is practically identical with the above-quoted part of section 12, except the italicized part, which is omitted.

In the case of Darlington et al. v. Turner et al. (1906) 202 U.S. 195, 26 S.Ct. 630, 643, 646, 50 L.Ed. 992, the Supreme Court of the

United States had fundamentally the same question presented. In a lengthy opinion written by Mr. Justice Edward Douglas White, the court said: ·

"It is undoubted that at the time of Silas· H. Turner's death the children, who were the beneficiaries under his will, were minors, and were domiciled with their father and mother, who were both alive and residing in the state of Louisiana. It is at once conceded that, under the law of Louisiana, a father or mother entitled to qualify as natural tutor (guardian) must be recognized by a court, and, as a condition precedent to such recognition, must have complied with the requirements of the law. Under the law of Louisiana such precedent requirements are the taking of the inventory, the recording of an abstract thereof, and an oath of office. As it is established that Thomas M. Turner performed none of these requirements and was never recognized by a court as the natural tutor of his children, it is insisted that he was wholly without power to represent them or to receive the .bequests made to them by the will of Silas H. Turner. But the proposition is inapposite and is based upon a misconception of the law of Louisiana, resulting from the assumption that, under that law, the rules governing the qualification and appointment of natural tutors after the death of one of the spouses applies to the case of a father, during marriage, representing and acting for and on behalf of his minor children.

"In the Civil Code of Louisiana of 1870, title 7, chapter 5, treating of father and child, it is provided as follows:

" 'Art. 221. The father is, during the marriage, administrator of the estate of his minor children.

" 'He is accountable both for the property and revenues of the estates, the use of which he is not entitled to by law, and for the property only of the estates, the usufruct of which the law gives him.

" 'This administration ceases at the time of the majority or emancipation of the children.'

"And in the same title and chapter it is further provided:

" 'Art. 223. Fathers and mothers shall have, during marriage, the enjoyment of the estate of their children until their majority or emancipation.'

"Moreover, in the same chapter, it is also provided:

" 'Art. 226. This usufruct shall not extend to any estate which the children may acquire by their own labor and industry, nor to such estate as is given or left them under the express condition that the father and mother shall not enjoy such usufruct.'

"These provisions of the Code of 1870 have obtained in that state from an early date. The first of them was in the Code of 1825, as article 267, under the title treating of minors and their tutorship, and under the. same title the provision was contained in the Code of 1808, in § 2 of chapter 8, article 5. And, as the inevitable result of these provisions of the Code, it has long been settled in Louisiana that the plenary power of the father as administrator, during marriage, of the estate of his minor children, born of

the marriage, was wholly distinct from tutorship, did not depend upon previous judicial recognition, and was not subjected to the precedent requirements essential to give rise to tutorship. In Cleveland v. Sprowl (1845) 12 Rob.(La.) 172, at page 173, the court said:

" 'Now, it is well known, that no tutorship exists, during the marriage, over the children issued from it, but that a child remains under the authority of his father and mother until his majority or emancipation. Civil Code, art. 234. The father is, during the marriage, administrator of the estate of his minor children; he is accountable both for the property and revenues of the estates, the use of which he is not entitled to by law, and for the property only of the estates, the usufruct of which the law gives him; and such administration ceases at the time of the majority or emancipation of the children. Art. 267. The natural tutorship only takes place after the dissolution of the marriage, by the death of either of the spouses, and belongs of right to the surviving one. Art. 268. Thus it is clear that the legal mortgage resulting from the tutorship is not applicable to the administration of the minor's property, given by law to the father, during the marriage. He is not a tutor; his duties and responsibilities are very different; and the law does not appear to have intended that, while the minor's estate remains under his father's administration during the marriage, his child should have a legal mortgage upon his father's property, as a security for the said administration.'

"As a result, it was expressly decided that neither the legal mortgage resulting from

tutorship nor the security generally required by law from usufructuaries were applicable to a father as administrator of the estates of his minor children during the marriage. Our attention has not been called to, nor have we been able to find, any decision of the supreme court of Louisiana modifying in the slightest degree the principles thus announced. On the contrary, in Gates v. Renfroe (1852) 7 La.Ann. 569, whilst the subject was not directly at issue, the court in its opinion assumed the law of Louisiana concerning the power of the father in administering the estates of his minor children, as previously stated, to be elementary.

"It is certain that the article relating to the power of the father to administer during marriage, which was originally enacted in the Code of 1808, was drawn from the Code Napoleon. We say this is certain, because not only did the article as enacted in the Codes of 1808 and 1825 exist in the Code Napoleon in absolutely identical words, but it was also in that code placed, as it was in the two earlier Louisiana codes, under the heading of minors and their tutorship. Code Napoleon, art. 389.

"The fact that the provision should more properly have been classed under the chapter of the Code treating of paternal authority has been recognized in France. In commenting upon this subject Demolombe says (vol. 6, No. 409):

" 'It is evident that this article appropriately belongs to the title treating of paternal power, because, during the marriage, tutorship does not exist. It is alone in virtue of the paternal power that the father

(or the mother, in the case of the father's incapacity) is charged with the administration of the goods belonging to his minor children.'

"The same commentator thus expounds the spirit of the article (ibid. No. 415):

" 'During the marriage, the father and the mother are present and co-operating with each other, consulting with each other, supervising, as it were, each other with that instinctive tenderness which is the result of their relation to their offspring. This the law assumes to be an assured and certain security for the children, founded, at the same time, upon both paternal and conjugal affection, of which the children are the pledge, and of which they are the most potent links for the perpetuation of the union. * * * Let us add that the conflicts between interests of the children and those of the parent which often arise from the death of one of the parents do not usually exist whilst both the parents are alive. These are the family considerations upon which the article is founded, and tradition plainly confirms them. Thus, in our ancient jurisprudence the distinction between the legal administration of a father and tutorship was well established. The first rested upon an agency created by law alone, based upon the confidence which the law reposed in paternal affection, from which it resulted that the powers of administration given to the father were broader and more comprehensive than those which the law conferred upon a tutor. Comp. Merlin, Rep. VII., V'Légitime administration; Coquille, sur l'art. 2, de la Coutume de Nivernais,—de Lauriére sur Loisel, Inst. Cout. livre 1, titre IV., régle 1.'

"And when the genesis of the enactment which passed from the Napoleon Code into the codes of Louisiana is considered, the accuracy of the observations of the commentator just cited is made clear. In the draft of the Napoleon Code which was first submitted, the provision subsequently contained in article 389 of that code was not found. The enactment of the article into the Code was the result of a recommendation by the Tribunat, its report on the subject expressly saying (Locré, Legislat.Civ. t. VII., p. 215):

" 'We think that the first article of the chapter should express in precise terms what, during the marriage, should be the authority of the father over the personal goods of his minor children. * * * Never up to this time has it been exacted that a father should be obliged to qualify as the tutor of his children before the dissolution of the marriage. *If, while the marriage exists, the law did not make a distinction between the father and mother and a tutor, in the proper sense of the word, it would follow that the father would be, as to the personal goods of his minor children, subjected during marriage to all the conditions and burdens which the law imposes upon a tutor. The father would then be, as to his minor children, under the supervision of an undertutor, would depend upon the advice of a family meeting, etc. etc., all of which would be repugnant to the accepted conceptions of paternal authority. It seems fitting that up to the dissolution of marriage the only title which the father should have is that of administrator, and it is for this reason that we recommend the adoption of the article.'*

"And the views which were thus expounded have been substantially applied by the decided cases in France, and are concurred in by the practically unanimous opinion of the theoretical writers. The result of those decisions and the opinions of the writers on the subject adequately portray the plenary power conferred upon the father as the administrator of all the property of his minor children during marriage, and the distinction between that authority and the narrower power as to the natural tutorship arising only after the dissolution of the marriage. The authorities will be found exhaustively collected in the notes to article 389 of the Napoleon Code in the Fuzier-Herman edition of that code, published at Paris in 1885.

"Much reliance in argument is placed upon the terms of article 3350 of the Louisiana Code of 1870, which reads as follows:

" 'Art. 3350. Before fathers and mothers, who, by law, are entitled to the usufruct of property belonging to their minor children, shall be allowed to take possession of such property and enjoy the fruits and revenues thereof, they shall cause an inventory and appraisement to be made of such property, and cause the same to be recorded in the mortgage book of every parish in the state where they or either of them have immoveable property.'

"This article was not contained in any of the previous codes. Its origin is this: Prior to the Louisiana Constitution of 1868 the moneyed obligations of natural tutors towards their minor children, of husbands to their wives, and some other pecuniary obligations expressly provided for by law, were secured by what was known to the Louisi-ana law as legal and tacit mortgages. Those mortgages existed by operation of law, and without registry. No such provision, however, ever obtained, as we have seen, concerning a father administering upon the estate of his minor children during the marriage. The Louisiana Constitution of 1868 (art. 123) provided that all legal, tacit mortgages should cease after a specified date, and expressly imposed upon the legislature the duty of providing by law for a mode of registry in order to preserve existing and future mortgages of that character. By an Act passed in 1869 [No. 95], entitled an act to carry out this article of the Constitution and 'to provide for recording all mortgages and privileges,' the legislature sought to comply with this constitutional direction. La.Acts 1869, p. 114. The act in question contained specific directions for recording mortgages of the character referred to, the mode of registry which was adopted as to these mortgages being the making of an abstract of an inventory showing the amount of the minor's property, and the putting of the same of record. Section 12, the last section of the act, contained the exact provision subsequently embodied when the Code of 1870 was adopted, in article 3350, except that § 12 of the act of 1869, moreover, had these words, which are not found in the article of the Code referred to: 'Which recordation shall operate a mortgage on such property until a final settlement of the administration of said property.' In other words, when the Code of 1870 came to be adopted, the compilers omitted the words of § 12 of the act of 1869 just quoted, but placed in the Code the remainder of the section providing for the registry of an abstract

of the inventory in the case stated. It is difficult to determine exactly the reason which impelled the compilers of the Code of 1870 to omit the provision as to mortgages found in § 12 of the act of 1869, *conceding that that provision was constitutional despite the title of the act,* and to re-enact the remainder of the section providing for the registering of an abstract of an inventory in the case named, since, by the omission of the provision as to mortgage, no possible security could arise from the recording of an abstract of an inventory in the case provided for. *For, certain it is that neither under the codes as they existed prior to 1870, nor in that code, was or is there any provision for a legal mortgage securing the minors against loss resulting from the enjoyment by either parents, during marriage, of a usufruct.* The intention of the compilers of the Code of 1870 not to change the powers of administration of the property of his minor children, conferred upon the father by the prior codes, is expressly shown by the re-enactment, without change, of those provisions, and is cogently exemplified by the further fact that, in re-enacting the provisions, in question, they were removed from the chapters of the Code referring to tutorship, and were transferred to the chapters of the Code relating to paternal authority. As the full significance to be given to article 3350 is a question of local Louisiana law, which we are not called to decide, except so far as is essential to the determination of the case before us, we content ourselves with saying that we think it is clear that that article in no way modifies or controls the full power of the father to administer, during marriage, the estates of his minor children, so well settled under the Louisiana law. In any event, we think that article 3350 simply implies that unless an inventory is made and an abstract recorded, the usufruct which otherwise would exist shall not obtain. But giving this effect to the article in no way modifies the powers of the administration conferred upon the father during marriage, to which we have referred, because, as clearly pointed out by the authorities which we have previously cited, the administration is wholly independent of the usufruct, and applies to the minor's property during marriage, whether or not there be a right of usufruct." (Italicizing ours.)

Notwithstanding this clear exposition of the law, let us now see what the Supreme Court of Louisiana said on the subject six years later.

In Aaron v. Bayon (1912) 131 La. 228, 59 So. 130, 132, the plaintiff brought suit for specific performance of a contract of sale of a certain piece of improved real estate which the defendant refused to accept title to, on the ground that there was a tacit minor's mortgage thereon in favor of the plaintiff's minor child, by reason of the fact that the plaintiff's husband, father of the child, had received $15,000 belonging to it, and that under the provisions of article 3350 of the Civil Code, the father was required to record an abstract of inventory which would operate as a legal mortgage in favor of the minor against the property in question. The organ of the court discussed the various pertinent articles of the Civil Code and the French law writers, who were also quoted in the Darlington v. Turner Case, supra, and referred to that authority, agree-

ing with the reasons therein set forth until the issue was narrowed to the question of whether or not the Legislature in adopting the Civil Code of 1870 intended that the omitted part of section 12 of Act No. 95 of 1869—the portion of the Revised Statutes in conflict with the Code—should be repealed and become inoperative and, being of the opinion that this was not the legislative intent and that the omitted part was still effective, concluded that the recordation of an abstract of inventory would create a legal mortgage in favor of the minor. The court also held that even though the father had neglected to record an abstract of inventory, nevertheless, the court would not require the defendant to accept the title with a tacit mortgage against it, and, therefore, annulled the judgment of the lower court and dismissed the suit. Thus, it will be seen that the case in this respect is in conflict with Darlington v. Turner, supra.

In Aaron v. Bayon, the author of the opinion points out that fathers and mothers, where they are both living, cannot be likened to tutors, as previously decided by the court; that even if the father, under such circumstances, could be likened to a tutor, the mother could not; and that he receives, holds, and administers the property of the minor and owes an accounting, but that she has no charge whatever of the property and does not owe an accounting. The court then observed, "if, therefore, we had to deal only with the provisions of the Code, we should have to conclude that said apprehended legal mortgage did not exist," because the foregoing italicized quoted part of section 12 of Act No. 95 of 1869, now section 2367 of the Revised Statutes, was omitted by the codifiers of the Code of 1870, for they failed to include it in article 3350, as we initially pointed out. The author, after determining that section 12 of Act No. 95 of 1869 had reference to fathers and mothers in their capacity as such and not to their quality as tutors, propounded the question as to whether or not that section was inoperative, being inconsistent with article 3312 of the Revised Civil Code, which provides that "No legal mortgage shall exist, except in the cases determined by the present Code." The court answered its inquiry in the negative by saying that, while the Legislature made the declaration that, in case of conflict between the Revised Statutes and the Codes, the latter should control, it was inconceivable that the Legislature contemplated that the repealing clause would be effective where there was a "conflict of such magnitude as the one now in question would be." It appears to us that the more obvious the conflict between the Revised Statutes and the articles of the Code of 1870 is, the more clearer the legislative intent that the provisions of the Code shall prevail is revealed. When, if ever, should the Codes prevail over the Revised Statutes, if not in a situation where the conflict is plain and unmistakable? Could the Legislature have meant that the Codes should govern only in cases where there was some obscurity, doubt, or uncertainty as to the conflict? What becomes of the legislative will, after the Legislature solemnly declares that the previous enactment in conflict with the present one shall not be considered, if a court holds that such a declaration must be ignored when a provision of a later statute is glaringly irreconcilable with a provision

of an earlier one? The author of the opinion did not support his view on this point with any citation or authority. We know of no other decision in the jurisprudence of this court where it has been held that, notwithstanding the clearly expressed legislative intention to repeal laws in conflict, such declaration must be disregarded on the theory that the Legislature did not contemplate a "conflict of such magnitude as the one now in question would be." The importance of the subject-matter, the glaring conflict between the Revised Statute and the Code make it appear unlikely that the matter escaped the attention of the legislators. The fact that a portion of section 12 of Act No. 95 of 1869, which expressly provides that the recordation of the abstract of inventory "shall operate a mortgage on said property, until a final settlement of the administration" was omitted from article 3350 of the Revised Civil Code of 1870, leads one to the conclusion that the codifiers and the legislators intended to place our law in accord with the law of France and accomplished this purpose by deliberately omitting the above quoted language.

Under the Roman, Spanish, and French Law, the father is the administrator of his children's estate during the marriage and the mother never has been a coadministrator of the estate with her husband. It is definitely the law of this state. Act No. 41 of 1916; Act No. 252 of 1920; Act No. 197 of 1924; Act No. 38 of 1921 (Ex.Sess.); and Act No. 74 of 1924.

Many years ago, this court held that where the provisions of the Code of Practice are inconsistent with those of the Civil Code, the latter must be considered as repealed and the former recognized as the law, because the statute adopting the Code of Practice provides that wherever its provisions are contrary to those of the Civil Code, the latter shall be considered as repealed. Desban v. Pickett, 16 La.Ann. 350; Flower v. Griffith, 6 Mart.(N.S.) 89.

It is our opinion that this court erred in holding that the provisions of section 12 of Act No. 95 of 1869, now section 2367, Revised Statutes, in conflict with the provisions of article 3350 of the Revised Civil Code, were still in force and effect, because those conflicting features were repealed by the Legislature in enacting the Revised Civil Code of 1870. It is clear that in the absence of the repealed language of section 12 of the act of 1869, a recordation of the abstract of inventory did not create a legal mortgage on the mother's property. Darlington et al. v. Turner et al. and Aaron v. Bayon, supra. This is in accord with the decisions of this court holding that the surviving spouse in community, having the usufruct of the children's part of the property, cannot be compelled to give security. Rev.Civ.Code, art. 916; Succession of Dielmann, 119 La. 101, 43 So. 972; Succession of Glancey, 114 La. 1051, 38 So. 826; Estate of Speyrer ex rel. Ortego v. Thantan, Administrator, 32 La. Ann. 1267; Cole v. La Chambre et al., 31 La.Ann. 41; Succession of Costa, etc., 19 La.Ann. 14.

It is our view that Darlington et al. v. Turner et al. is a correct expression of the law of this state. No statutory change has been made since it was written. Therefore, in so far as Aaron v. Bayon, supra, conflicts

with Darlington et al. v. Turner et al., supra, it is overruled.

The conclusion that we have reached makes it unnecessary for us to consider the serious constitutional question raised by the plaintiff, in the alternative.

For the reasons assigned, the judgment appealed from is affirmed.